UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TECHNOMARINE SA, a Swiss Corporation, | Civil Action No. 11 Civ. 9643 (DAB) |
| Plaintiff, | ECF |
| – against – | |
| GIFTPORTS, INC., a New York Corporation; and DOES 1-10, inclusive, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT AND PROCEDURAL HISTORY ............................................. 1

RELEVANT ALLEGATIONS and FACTUAL BACKGROUND ............................................. 4

            The Prior 2008 Action ................................................................4

            The 2011 Action – Original Complaint ........................................5

            The 2011 Action – First Amended Complaint............................6

ARGUMENT ...................................................................................................................... 6

I.       THE 2011 ACTION IS BARRED BY RES JUDICATA AND SHOULD BE DISMISSED ............................................................................................................. 6

II.     THE 2011 ACTION SHOULD BE DISMISSED ON  THE GROUNDS OF ACQUIESCENCE, EQUITABLE ESTOPPEL AND LACHES .................................... 10

     A.    Acquiescence and Equitable Estoppel Bar Plaintiff's Claims .............................. 10

     B.    Plaintiff's Unreasonable Delay Bars Its Claims .................................................. 12

III.    PLAINTIFF HAS FAILED TO ALLEGE A LANHAM ACT VIOLATION ................. 13

     A.    No Lanham Act Claim for Sale of Genuine Watches............................................ 14

     B.    There Can Be No Likelihood of Confusion From Giftports' Sale of Genuine Watches............................................................................................................... 15

     C.    Defendant's Disclaimer Avoids Likelihood of Confusion ................................... 16

     D.    There Is No Possibility of Dilution From The Sale of Genuine Goods............... 17

IV.    PLAINTIFF'S TORTIOUS INTERFERENCE   CLAIM SHOULD BE DISMISSED .. 18

V.     THE COMPLAINT'S FIFTH CLAIM FOR COMMON  LAW UNFAIR COMPETITION SHOULD BE DISMISSED ................................................................. 21

VI.    THE COMPLAINT'S SIXTH CLAIM FOR  COPYRIGHT INFRINGEMENT SHOULD BE DISMISSED ............................................................................................ 21

     A.    Defendant Should Be Awarded Its Fees And Costs Under 17 U.S.C. § 505........ 25

CONCLUSION.................................................................................................................. 25

## TABLE OF AUTHORITIES

**CASES**

*A&G Healthplans, Inc. v. National Network Servs. Consultants, Inc.*,
No. 99 CV 12153 (GBD), 2003 WL 1212933 (S.D.N.Y. Mar. 14, 2003) ............................. 21

*Amherst Records, Inc. v. Silver,* 2000 WL 1041666 (S.D.N.Y. July 27, 2000) ........................... 8

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ................................................... 13, 19

*Bel Canto Design, Ltd. v. MSS HiFi, Inc.*,
No. 11 Civ. 6353 (CM) 2011 WL 6355215 (S.D.N.Y. Dec. 16, 2011)............................... 2, 14

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................. 13

*Camp Summit of Summitville, Inc. v. Visinski*, No. 06-cv-4994 (M) (GAY),
2007 U.S. Dist. WL 1152894 (S.D.N.Y. Apr. 13, 2007)......................................... 18

*Chase Manhattan Bank, N.A. v. Celotex Corp.*, 56 F.3d 343 (2d Cir. 1995) ............................... 7

*Coach, Inc. v. Peters,* 386 F. Supp. 2d 495 (S.D.N.Y. 2005) ...................................... 23

*Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187 (2d Cir. 1996) ................................. 13

*Deere Co. v. MTD Holdings Inc.*, 2004 WL 324890 (S.D.N.Y. 2004) .................................. 10, 12

*Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 449 U.S. 340 (1991)......................... 22

*Folio Impressions, Inc. v. Byer Cal.*, 937 F.2d 759 (2d Cir. 1991) ............................. 22

*H.G. Shopping Centers, L.P. v. Birney,* No. H-99-0622,
2000 WL 33538621 (S.D. Tex. Nov. 29, 2000) .................................................... 10

*H.L. Hayden Co. of New York, Inc. v. Siemans Medical Systems, Inc.*,
879 F.2d 1005 (2d Cir. 1989) ................................................................. 3, 14, 15

*Hoffman v. Wisner Classic Mfg. Co.*, 927 F. Supp. 67 (E.D.N.Y. 1996) ...................................... 6

*Horn's, Inc. v. Sanofi Beaute, Inc.*, 963 F. Supp. 318 (S.D.N.Y. 1997)...................................... 21

*Imtrac Indus., Inc. v. Glassexport Co., Ltd.*, No. 90 Civ. 6058,
1996 WL 39294 (S.D.N.Y. Feb. 1, 1996)......................................................... 20

*Jasper & Black, LLC v. Carolina Pad Co.*, LLC, No. 10 Civ. 3562 (LTS)(HBP),
2012 WL 413869 (S.D.N.Y. Feb. 9, 2012)................................................. 13, 18, 20

*John Muller & Co. v. New York Arrows Soccer Team, Inc.*,
802 F.2d 989 (8th Cir. 1986) .................................................................. 23

*John Paul Mitchell Systems v. Pete-N-Larry's Inc.*,
862 F. Supp. 1020 (W.D.N.Y. 1994)............................................................. 19

**CASES** (cont'd.)

*Kitchen of Sara Lee, Inc. v. Nifty Foods Corp.,*
  266 F.2d 541 (2d Cir. 1959) ........................................................................... 23

*La Cibeles, Inc. v. Adipar, Ltd.,* No. 99 Civ. 4129 (AGS),
  2000 WL 1253240 (S.D.N.Y. Aug. 31, 2000)................................................. 21

*Languages of Am., Inc. v. Everst House,*
  619 F.2d 211 (2d Cir. 1980) ............................................................................. 8

*Nemaizer v. Baker,* 793 F.2d 58 (2d Cir. 1986).......................................................... 8

*Plasticware, LLC v. Flint Hills Res., LP,* No. 10 Civ. 6650 (KMK),
  2012 WL 983373  (S.D.N.Y. Mar. 22, 2012)................................................. 18

*Polymer Tech. Corp. v. Mimran,*
  975 F.2d 58 (2d Cir. 1992) ............................................................................. 14

*PrimeSource*, *Inc. v. Personnel Resource, Inc.*
  1998 WL 543366 (W.D.N.Y. 1998) ............................................................... 23

*Schenk v. Mine Mgmt. Co. .,* No. 89–CV–97,
  1997 WL 31400 (N.D.N.Y. Jan.23, 1997)......................................................... 7

*Semple v. Eyeblaster, Inc.,* No. 08 Civ. 9004 (HB),
  2009 WL 1457163 (S.D.N.Y. May 26, 2009) ........................................... 18, 20

*Solow Building Co. v. Nine West Group, Inc.,*
  48 Fed. Appx. 15, 2002 WL 31303237 (2d Cir. 2002).................................... 12

*Starr v. Sony BMG Music Entm't,*
  592 F.3d 314 (2d Cir. 2010) ........................................................................... 13

*Stonewall Ins. Co. v. Nat'l Gypsum Co.,* No. 86 Civ. 9671,
  1992 WL 51567 (S.D.N.Y. March 9, 1992) ..................................................... 8

*Trustees of Columbia University v. Columbia/HCA Health Care Corp.,* 964 F.Supp. 733
  (S.D.N.Y. 1997).......................................................................................... 12, 13

*Tufenkian Imp./Exp. Ventures, Inc. v. Einstein Moomjy, Inc.,*
  338 F.3d 127, 132 (2d Cir. 2003) ................................................................... 22

*Ty Inc. v. Perryman,*
  306 F.3d 509 (7th Cir. 2002) ......................................................................... 17

*V. Marangi Carting Corp. v. Judex Enters.,*
  171 Misc. 2d 820, 655 N.Y.S.2d 832 (Sup. Ct. N.Y. County 1997) ...................... 20

*Vargas v. Pfizer, Inc.*, 418 F. Supp. 2d 369 (S.D.N.Y. 2005)...................................... 22

**CASES** (cont'd.)

*Waldman v. Vill. of Kiryas Joel,* 39 F. Supp. 2d 370 (S.D.N.Y 1999) ........................................... 8

*White v. U.S. Postal Serv.*, Civ. No. 04-0602,
    2005 WL 408047 (E.D.N.Y. Feb. 16, 2003) ...................................................... 8, 9

*WorldHomeCenter.Com, Inc. v. Franke Consumer Prods.*,
    2011 WL 2565204 (S.D.N.Y. June 22, 2011). ...................................................... 20

*Zip Int'l Group, LLC v. Trilini Imports, Inc.*, No. 09-CV-2437 (JG)(VVP),
    2011 WL 2132980 (E.D.N.Y. May 24, 2011) ...................................................... 14

**STATUTES**

15 U.S.C. § 1114 ................................................................................................ 5, 16

15 U.S.C. § 1125(a) ........................................................................................ 3, 5, 16

15 U.S.C. § 1125(c) ........................................................................................... 5

17 U.S.C. § 101 ................................................................................................. 3

New York General Business Law § 369 ........................................................................ passim

**RULES**

37 C.F.R. § 202.1 ......................................................................................... 2, 22, 24

Fed. R. Civ. P. 12(b) ..................................................................................... 18, 20, 21

**OTHER AUTHORITIES**

*McKinney's Consol. Laws of N.Y., Vol. 19* (Givens) ...................................................... 14

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
## FIRST AMENDED COMPLAINT

Defendant Giftports, Inc. ("Giftports"), by its attorneys Schwartz & Thomashower LLP, respectfully submits this Memorandum of Law in support of its motion, pursuant to Fed. R. Civ. P. Rule 12(b), to dismiss the First Amended Complaint of plaintiff TechnoMarine SA ("plaintiff" or TechnoMarine).

## PRELIMINARY STATEMENT AND PROCEDURAL HISTORY

Plaintiff claims to be the manufacturer and exclusive distributor of TechnoMarine brand watches in the United States.  As the First Amended Complaint acknowledges, Giftports is an internet retailer located in New York which sells genuine luxury brand watches and other accessories on its public website www.jomashop.com.  Plaintiff  originally commenced this action on December 28, 2011 for trademark infringement and other Lanham Act and common law claims including interference with contract, alleged to arise from Giftports' sale of genuine TechnoMarine brand watches (sometimes, the "Watches").   Among other things, the Fourth Claim for "tortious interference" asserted that defendant was buying genuine Watches from plaintiff's authorized dealers and reselling them.

Defendant moved to dismiss under Fed. R. Civ. P. Rule 12(b)(6) by Motion dated March 28, 2012 with a supporting Declaration of defendant's counsel, exhibits and a Memorandum of Law.  Among other things, the Motion argued that the Complaint should be dismissed on the grounds of *res judicata* in view of the same plaintiff's 2008 action in this Court for many of the same causes of action, for laches and estoppel, and on the grounds that under settled Lanham Act precedents,  the mere purchase and resale of genuine trademarked goods, even by a seller who is not the trademark owner's "authorized dealer" does not state a claim under the Lanham Act. Such "gray market" sales of identical goods are lawful.[1]

---

[1] This action appears to be one of a group of recent trademark cases filed by TechnoMarine, four in this Court and two in the Central District of California including *TechnoMarine SA v. Jacob Time Inc.,* 12 Civ. 00790 (KBF)(SDNY) (Rule 12(b)(6) motion to dismiss pending), all filed by the same California counsel with similar complaints seeking to stop such "gray market" sales which authorized dealers object to because they represent retail price competition despite saving consumers money on genuine goods.

Instead of answering the motion, plaintiff served a First Amended Complaint dated April 19, 2012 ("Amended Complaint").   Defendant now moves to dismiss the Amended Complaint under Rule 12(b)(6) and again submit a supporting Declaration of William Thomashower, ("Thomashower Dec.") attorney for defendants with exhibits including the Amended Complaint, record documents from the prior action, and copyright and trademark registrations of plaintiff.

The Amended Complaint substantially repeats the original claims with two changes. First, plaintiff abandoned the allegation for its Lanham Act claims that the resold goods were "materially different" because plaintiff would not honor its manufacturer's warranty.  Plaintiff recognized that no material difference can be "created" in that fashion in New York due to the decision in *Bel Canto Design, Ltd. v. MSS HiFi, Inc.,* No. 11 Civ. 6353 (CM),  2011 WL 6355215, at *12 (S.D.N.Y. Dec. 16, 2011) holding that New York General Business Law ("GBL") § 369-b prohibits a manufacturer from limiting its warranty depending on who sold the goods.  The Amended Complaint therefore alleges no material difference in the goods, which is not surprising since in the same pleading's Fourth Claim, plaintiff asserts that defendant bought and resold genuine goods from its authorized dealers.

The second substantive change in the Amended Complaint is the addition of a new Sixth Claim for infringement of two U.S. copyrights, which remarkably were not registered until March 16, 2012, months after commencement of this action and notice to plaintiff that defendant would be moving to dismiss the trademark claims.  Moreover, the copyrights purport to register what plaintiff identifies as its "logo" of the letters T and M (the "TM logo") (Am. Complaint ¶65).  As we will show, this claim is not plausible because (1) as a matter of law, "mere variations of typographic ornamentation, letter or coloring" are "not subject to copyright."  37 C.F.R. § 202.1(a) and (2)  the copyright registrations assert the design was "first published" in 2010 and 2012, although the exact same TM logo is found in plaintiff's U.S. Trademark Registration No. 2,932,608 based on a date of first use of 1998 (Thomashower Decl. Ex G).

## SUMMARY OF ARGUMENT

As we demonstrate below, all the claims in the Amended Complaint should be dismissed.

1.   Plaintiff is barred by *res judicata* from bringing its Lanham Act, copyright and related state law claims in this action because there is a Final Judgment on the merits between this same plaintiff and this same defendant in a 2008 action that resolved the same claims arising out of the same facts plaintiff is asserting here and dismissing that action <u>with prejudice</u>.  *See TechnoMarine SA v. Giftports Inc. and John Doe I,* No. 08 Civ. 10911 (S.D.N.Y.) (the "2008 Action") (Thomashower Decl. Exhibits A, B and C).

2.   Plaintiff's claims are barred by the separate doctrines of acquiescence, equitable estoppel and laches because plaintiff's conduct in, among other things, dismissing the prior 2008 Action with prejudice and with no provision restricting Giftports sales of the plaintiff's TechnoMarine brand watches led Giftports to believe plaintiff had no further objections to such sales and was not further enforcing any claimed rights.  Plaintiff then waited nearly three years to commence this action even though Giftports was openly and notoriously selling the Watches on its internet site www.jomashop.com, which site has long been known to plaintiff.

3.   Plaintiff's Lanham Act claims against Giftports for trademark infringement, false designation of origin, and trademark dilution and related state law claim for unfair competition fail because TechnoMarine does not plead that the Watches have any "material difference" from genuine Watches, and indeed, they do not since this is a mere purchase and resale protected under the First Sale doctrine.  As a matter of law, the Lanham Act does not apply and there is no "infringement" or "dilution" because when "a genuine product is sold, no possibility of confusion exists."  *H.L. Hayden Co. of New York, Inc. v. Siemans Medical Systems, Inc.,* 879 F.2d 1005, 1023 (2d Cir. 1989).

4.   Plaintiff's copyright claims should be dismissed because on the face of the Amended Complaint plaintiff has asserted that its copyright is a mere "variation" of the letters T and M in

the TM logo, which is not copyrightable subject matter and was not disclosed in the copyright applications.  Moreover, there are no facts to allege "copying."

5.   Plaintiff's tortious interference claim should be dismissed because plaintiff fails adequately to allege (a) the specifics of which contracts plaintiff had, and with whom, which have been breached, and (b) what Giftports did with respect to any contracting party that was actually a "knowing inducement" of that breach and (c) through what improper means defendant allegedly induced a breach, as opposed to merely purchasing product that other sellers chose to sell and made available with no "inducement" at all.

## RELEVANT ALLEGATIONS and FACTUAL BACKGROUND

The Prior 2008 Action

On December 20, 2008, the same plaintiff commenced an action in this Court against the same defendant here, Giftports Inc., entitled *TechnoMarine SA v. Giftports, Inc., et al.,* 08-Civ-10911 (LAK) (S.D.N.Y.).  A copy of the Second Amended Complaint, filed March 11, 2009 in the 2008 Action (the "2009 Complaint") is annexed as Exhibit A to the supporting Declaration of William Thomashower, Esq., dated May 24, 2012 (the "Thomashower Dec.").

The 2009 Complaint contained three causes of action against Giftports: (1) copyright infringement, under 17 U.S.C. § 101, *et seq.,* based on Giftports' alleged unauthorized use of plaintiff's photographs of its TechnoMarine brand watches (2009 Complaint ¶¶ 22-26); (2) federal unfair competition under the Lanham Act, 15 U.S.C. §1125(a), based on, *inter alia*, allegations that Giftports intended purchasers to believe Giftports was "an authorized source for TechnoMarine brand watches" and that defendants were selling TechnoMarine brand watches "without the benefit of the warranty and after sales service that TechnoMarine provides for such products" (*id.* ¶ 30); and (3) alleged interference with plaintiff's contractual relations with its "authorized retailers and distributors."

The entire 2008 Action was settled, without any admission of liability by Giftports, as of April 23, 2009, pursuant to the terms of the Litigation Settlement Agreement and Mutual Release

(the "Settlement Agreement").  A copy of the Settlement Agreement is annexed as Exhibit B to the Thomashower Dec.

Pursuant to the settlement agreement, plaintiff agreed to dismiss with prejudice all of the claims in the 2008 Action.  Included in plaintiff's agreement to dismiss were all claims arising out of Giftports' purported "unauthorized sale" of TechnoMarine brand watches which Giftports had allegedly purchased in "bad faith" from authorized TechnoMarine retailers and distributors.  Plaintiff's claims were dismissed with prejudice.  A copy of the fully executed, So Ordered Stipulation of Dismissal (filed as Docket No. 12 on April 24, 2009)(the "Stipulation and Order") is annexed to the Thomashower Dec. as Exhibit C.  The Stipulation and Order expressly stated that "the within action, and all claims that were or could have been asserted therein shall be dismissed with prejudice …."  (Emphasis added.)

In the Settlement Agreement, plaintiff obtained an express warranty and representation from the Giftports defendant that it "has ceased all use of any copies of Plaintiff's Copyrighted Work [defined therein as the 2008 Online TechnoMarine Watch Catalog] as of at least as of January 16, 2009."  (Emphasis in the original.)  Settlement Agreement ¶ 1, Exhibit B to the Thomashower Dec.  The present 2011 Action makes no claim of breach of this Settlement Agreement.

Significantly, plaintiff did not obtain in the Settlement Agreement any covenant, agreement, warranty or representation, express or implied, from the Giftports defendant that it had stopped selling or that it would stop selling TechnoMarine brand watches after the effective date of the parties' settlement.

The 2011 Action – Original Complaint

On December 28, 2011, plaintiff filed the above-captioned action entitled *TechnoMarine SA v. Giftports, Inc. and Does 1-10*, 11 Civ. 9643 (DAB) (S.D.N.Y.)(the "2011 Action").

The Complaint as first filed in this action ("Original Complaint" filed as Docket No. 1) asserted the following claims: (1) trademark infringement, pursuant to 15 U.S.C. § 1114; (2)

5

false designation of origin, pursuant to 15 U.S.C. § 1125(a); (3) trademark dilution, pursuant to 15 U.S.C. § 1125(c); (4) tortious interference with contractual relations; and (5) unfair competition under New York common law.

Comparison of the 2009 Complaint with the 2011 Complaint confirms the identity of the facts and claims asserted in the two pleadings. In fact, many of the allegations of the 2009 Complaint are copied verbatim in the 2011 Complaint. Moreover, plaintiff's current counsel Blakely Law Group is affiliated with the firm, Tucker and Latifi, which prepared, filed and settled the 2008 Action. (*See* http://www.blakelylawgroup.com/main.swf (Click "Attorneys")).

The 2011 Action – First Amended Complaint

The First Amended Complaint (Thomashower Dec. Ex. D, Docket No. 13) repeats the same five claims listed above as in the Original Complaint but omits from the Lanham Act claims the allegations as to sales by defendant "without the comprehensive warranty" from TechnoMarine.[2] The Amended Complaint also adds a Sixth Claim for copyright infringement under 17 U.S.C. § 501 based on a "TM logo" design claimed to be registered as in two U.S. copyright registrations in March 2012, *long after* this action commenced. But the TM logo design is found in plaintiff's U.S. registered trademark with first use as far back as 1998 (Thomashower Dec. Ex. G)

## ARGUMENT

### I.     THE 2011 ACTION IS BARRED BY RES JUDICATA AND SHOULD BE DISMISSED

It is beyond cavil that a final judgment on the merits in a prior action prevents the same parties, and their privies, from re-litigating all claims that were or could have been raised in the prior action, regardless of the legal theory later asserted.[3]  *See, e.g., Hoffman v. Wisner Classic Mfg. Co.,* 927 F. Supp. 67, 72 (E.D.N.Y. 1996). It is also settled law that "a stipulation of

---

[2] This "warranty" allegation had been stated in ¶32 of the Complaint as originally filed.

[3] The affirmative defense of *res judicata* is a proper basis of a motion to dismiss a pleading. *See Day v. Moscow,* 955 F.2d 807, 811 (2d Cir.1992).

dismissal with prejudice is considered a final judgment on the merits for purposes of res

judicata"(citing *Chase Manhattan Bank, N.A. v. Celotex Corp.,* 56 F.3d 343, 345 (2d Cir. 1995));

*Schenk v. Mine Mgmt. Co. .,* No. 89–CV–97, 1997 WL 31400, at *2 n. 15 (N.D.N.Y. Jan.23,

1997) (stating "[t]here is no doubt" that voluntary dismissal with  prejudice is an adjudication on

the merits giving rise to res judicata).

As the record facts above make clear, supported by the documents of record in the prior

action (Thomashower Dec. Exhibits A-C), Giftports is entitled to dismissal of the 2011 Action

based on the Final Judgment of Dismissal with prejudice, on the merits of the 2008 Action which

raised the same claims between the same parties.[4]

The parties in both actions are undeniably the same.  In addition, two of the claims are

identical.  In both the 2008 and the 2011 Action, plaintiff alleged a claim for false designation of

origin pursuant to 15 U.S.C. 1125(a). *Compare* 2009 Complaint, ¶¶ 27-33, Exhibit A to the

Thomashower Dec., with 2011 Original Complaint ¶¶ 40-45 (Docket No. 1) and First Amended

Complaint ¶¶ 38-43, Exhibit D to the Thomashower Dec.   Plaintiff also asserted the same claim

for tortious inference with contract in both actions.  *Id.,*  2009 Complaint at ¶¶ 34-36 with

Original Complaint at ¶¶ 55-60 and First Amended Complaint ¶¶ 53-58.  Both of these claims

were based on Giftports' purportedly unauthorized sale of Watches,  purchased allegedly in "bad

faith" from TechnoMarine's authorized dealers.

The remaining federal and state law claims in the current 2011 Action – infringement, of

registered trademark, trademark dilution, state common law unfair competition and copyright

infringement – are all claims that could have been raised in the 2008 Action as well.  Each of

these claims plainly arises out the same facts that defendants were selling TechnoMarine brand

Watches, bearing TechnoMarine trademarks and the TM logo copyrighted design, allegedly

---

[4] The 2008 Complaint, the Settlement Agreement, and the Stipulation and Order are all incorporated by reference in the 2011 Complaint, and are also matters of which judicial notice may be taken.  Each of these documents is therefore properly considered on this motion.  *See Carruthers v Flaum,* Civ. NO. 03-7768 (CM), 2005 WL 2345884 (S.D.N.Y. Sept. 21, 2005); *Cowan v. Codelia,* Civ. No. 98-5548, 2001 WL 856606 (S.D.N.Y. July 30, 2011)(Noting that "it is proper to consider public documents on a motion to dismiss to determine whether claims are barred by prior litigation").

obtained from authorized TechnoMarine retailers and distributors (who allegedly were not authorized to sell them to Giftports).   The complaints in both actions asserted that Giftports' subsequent sale of those Watches was "unauthorized" and  "without plaintiff's permission."   Thus, Giftports' purchase and sale of the Watches is the common factual predicate for both the 2008 Action and each of the six claims asserted in this 2011 Action.

The newly asserted copyright claim likewise arises from sales of the Watches with the copyrighted TM logo.   There is no allegation that this logo is different from that which appeared on the Watches in 2008 when defendant was first sued.[5]   Accordingly, the factual and legal issues presented the 2008 Action and the 2011 Action arise from the same core operative facts and are essentially identical for purposes of *res judicata*.   Thus the claims were or "could have been" asserted in the 2009 Complaint.   Plaintiff is therefore barred by *res judicata* from re-litigating those claims here.  *See, e.g., Berlitz Schools of Languages of Am., Inc. v. Everst House,* 619 F.2d 211 (2d Cir. 1980)(affirming dismissal of trademark action due to *res judicata*); *Amherst Records, Inc. v. Silver,*  2000 WL 1041666, *3 (S.D.N.Y. July 27, 2000).

Alternatively, the Settlement Agreement, the validity of which is not contested, also bars plaintiff's claims due to *res judicata*.  *See, e.g., Nemaizer v. Baker,* 793 F.2d 58, 61 (2d Cir. 1986); *Stonewall Ins. Co. v. Nat'l Gypsum Co.,* No. 86 Civ. 9671, 1992 WL 51567, at *5 (S.D.N.Y. March 9, 1992); *Waldman v. Vill. of Kiryas Joel,* 39 F. Supp. 2d 370, 377 (S.D.N.Y 1999).   The preclusive effect of a settlement is determined by the intent of the parties, which is interpreted according to the language of the agreement.  *White v. U.S. Postal Serv*., Civ. No. 04-0602, 2005 WL 408047 (E.D.N.Y. Feb. 16, 2003).

---

[5] We note also that copyright inheres in an original design (if copyrightable subject matter) at the time it is fixed in a tangible medium.   The copyright law expressly provides that "copyright protection subsists, in accordance with this title, in original works authorship fixed in a tangible medium of expression … ."  17 U.S.C. §102.  Thus, TechnoMarine's copyrights, if any, subsisted from when the first TM logo was fixed in a visual medium, namely the Watch or its packaging or advertising.   Documentary evidence from TechnoMarine itself confirms this was at least since 1998 (Thomashower Decl. Ex. G, TM logo as part of trademark registration).  The fact that TechnoMarine did not seek registration for this alleged copyright until March 2012 does not mean it did not have such rights in 2008 when the prior suit was brought, only that it had not acted diligently to obtain a registration.   Such delay be plaintiff cannot avoid the res judicata effect against all claims which "could have brought" in the prior suit had plaintiff been more diligent.

The plain language makes it clear that the Settlement Agreement was intended to be a final settlement regarding Giftports' sale of TechnoMarine brand watches purchased from TechnoMarine's authorized retailers, and then re-sold without plaintiff's permission (or warranty).  Indeed, the Settlement Agreement expressly provides that the "parties desire to settle the controversy between them, including all issues in the Civil Action." Settlement Agreement, at 1, Exhibit B to the Thomashower Dec.

In addition, the parties "irrevocably and unconditionally release[d] and forever discharge[d] one another…from any and all liability, actions, claims, demands, costs, expenses, damages, causes of action, suits or obligations of any nature whether based on statute, contract, tort or otherwise, whether known or unknown, foreseen or unforeseen, accrued or **hereafter accruing...**relating to the claims alleged in the Civil Action **or arising from the facts alleged therein**...." *Id.* ¶ 4. (Emphasis added.)

Under the terms of the Settlement Agreement, plaintiff dismissed its lawsuit with prejudice and resolved and released Giftports from claims **arising from** the very same facts plaintiff is alleging here.  The parties' intent to conclusively resolve all the issues is confirmed by the fact that plaintiff did <u>not</u> secure Giftports' agreement to stop selling TechnoMarine brand watches as a condition of its settlement agreement to dismiss the 2008 Action with prejudice. Reopening these settled claims would destroy the finality and repose brought by the release and by the judgment entered on the merits and with prejudice in the first action.  This would simply encourage plaintiff to bring and dismiss *seriatim* lawsuits with the goal of increasing its potential damage award or favorable settlements, or harassing bona fide gray market resellers.   Having brought the prior action on the same claims and same facts, this same plaintiff was obligated to try them to conclusion, or settle them.  It chose settlement and dismissal with prejudice.  The doctrine of *res judicata* is now a bar to re-litigation of the same claims, which would be inequitable and wasteful conduct.

9

## II.      THE 2011 ACTION SHOULD BE DISMISSED ON
## THE GROUNDS OF ACQUIESCENCE, EQUITABLE ESTOPPEL AND LACHES

Even if  the 2011 Action were not barred in its entirety by *res judicata,* it nevertheless

would be inequitable to allow plaintiff to proceed with this action after it (a) voluntarily

dismissed the 2008 Action, (b) released Giftports fully and unconditionally from all claims

arising from or "hereafter accruing" from the facts alleged in the 2009 Complaint, and (c) then

disappeared for almost three years while Giftports continued to publicly sell TechnoMarine

brand watches, believing that it was free from future litigation as a result of the parties' prior

settlement agreement which did not restrict such sales.

A.      Acquiescence and Equitable Estoppel Bar Plaintiff's Claims

The affirmative defenses of acquiescence and estoppel are closely related, and both are

available to a defendant accused of trademark infringement and related claims. *See, e.g., Deere*

*Co. v. MTD Holdings Inc.,* 2004 WL 324890 (S.D.N.Y. 2004) at 18-22; *H.G. Shopping Centers,*

*L.P. v. Birney,* No. H-99-0622, 2000 WL 33538621 (S.D. Tex. Nov. 29, 2000).  To prevail on an

estoppel defense, a trademark infringement defendant need only show that a (1) plaintiff's

misleading communication, with plaintiff's knowledge of true facts, prompted defendant to infer

that plaintiff would not enforce its rights against defendant; (2) defendant relied on that conduct;

and (3) defendant would be prejudiced if plaintiff were allowed to bring suit. *Id.*  The defense of

acquiescence is "available when a plaintiff has responded to a defendant's actions with implicit

or explicit assurances upon which the defendant relied."  *Id.*

The factors required for dismissal on the basis of estoppel and acquiescence are

evidenced here on the face of the pleadings and the supporting public record documents.  First,

plaintiff had specific communication with Giftports by bringing the prior 2008 Action and then

signing a settlement agreement of that action.  This conduct clearly communicated that

TechnoMarine objected to Giftports sales of genuine Watches because Giftports was not a

TechnoMarine "authorized" dealer and was asserting legal claims against such conduct.  Then

TechnoMarine entered a written settlement agreement of that action which communicated that

10

except for the requirement that Giftports use its own product photographs and not TechnoMarine's photographs, Giftports was not required to stop selling TechnoMarine brand watches. These communications clearly led defendant to reasonably understand and believe that plaintiff would not enforce further rights against defendant for sales of the same TechnoMarine Watches obtained from authorized dealers. The 2011 Action filed for continuation of the very same conduct shows that defendant was truly misled.

In fact, the Original Complaint in this action (Docket No. 1) acknowledged the prior lawsuit and settlement (Complaint ¶¶23-24) and asserted that after the settlement, "TechnoMarine recently discovered that defendant has continued to sell TechnoMarine branded products via its website – www.jomashop.com." (Id., ¶ 25). Of course the allegation of "recently discovered" is plainly misleading or illustrative of a lack of diligence, since there is no allegation that the prior settlement required any cessation of such sales or that the defendant's public website ceased to operate and sell such goods after that settlement.

The present Amended Complaint, while studiously dropping reference to the prior suit and settlement (which is nevertheless deemed admitted here by the prior pleading), does not allege that Giftports did anything other than continue to sell the same TechnoMarine brand watches "bearing the TechnoMarine Marks on its website – www.jacobtime.com [sic: www.jomashop.com]." Thomashower Dec. Ex. D, at ¶25.[6]

Based on this conduct – as well as plaintiff's nearly 3 year disappearance while Giftports sales continued – Giftports was led to believe that the issue had been conclusively resolved and that it was free to purchase and sell the Watches, which it did, open and notoriously on its public website www.jomashop.com.

---

[6] Plaintiff's recent campaign of presenting of multiple similar complaints against gray market resellers is so formulaic that this Amended Complaint correctly refers to defendant's website as Jomashop.com in ¶ 23 but erroneously calls it jacobtime.com in ¶24, thus confusing these allegations with those in the co-pending TechnoMarine action against Jacobtime, before Judge Forrest in this Court. (See footnote 1 *supra*.).

Second, Giftports justifiably relied on the prior settlement and almost 3 years of inaction by plaintiff, when Giftports continued purchasing and selling the TechnoMarine Watches.

The third requirement for equitable estoppel, prejudice to defendant, is also met. As the record confirms, due to plaintiff's agreement to release Giftports and to dismiss the claims with prejudice, defendant agreed to settle the 2008 Action, knowing it could continue sales of the Watches. Upon the dismissal of the action, Giftports continued to openly advertise and sell TechnoMarine brand watches, and to develop its TechnoMarine business with the justifiable and reasonable reliance that it could continue to do so without having to defend yet another lawsuit. Allowing plaintiff to continue the 2011 Action on these facts would materially prejudice Giftports, expose it to damage claims and the possibility of removing the products from sale, which would harm its reputation as a full-line watch reseller.

Finally, plaintiff's acceptance of the settlement with no limitation on defendant's continuing sales, followed by almost 3 years of inaction, demonstrates that plaintiff acquiesced in such sales.   Accordingly, the 2011 Complaint should be dismissed in its entirety on the grounds of equitable estoppel and acquiescence.

B.      Plaintiff's Unreasonable Delay Bars Its Claims

Alternatively, the 2011 Complaint should be dismissed for laches, again based on the face of the pleadings and the supporting record documents.  Unlike equitable estoppel, laches does not require a showing that plaintiff misled Giftports.  Instead, Giftports need only show plaintiff's unjustified delay and that it will be prejudiced by permitting the plaintiff to assert its rights at this time. *See, e.g., Deere & Co., supra; Trustees of Columbia University v. Columbia/HCA Health Care Corp.,* 964 F. Supp. 733 (S.D.N.Y. 1997); *Solow Building Co. v. Nine West Group, Inc.,* 48 Fed. Appx. 15, 2002 WL 31303237 (2d Cir. 2002).

Under the facts and circumstances detailed above, plaintiff's almost three year delay between the April 2009 dismissal and its commencement of this action is inexcusable. Plaintiff indisputably has known since at least December, 2008, when the prior Action was filed, that

Giftports has been publicly selling TechnoMarine brand watches on its internet site
www.jomashop.com. *See* 2009 Complaint ¶ 23, Exhibit B to the Thomashower Dec.  Plaintiff
had no reason to think that Giftports had stopped purchasing and selling TechnoMarine brand
watches after the 2008 Action was dismissed, since plaintiff did not obtain Giftports' agreement
to cease doing so as part of the parties' settlement. Indeed, plaintiff concedes Giftports
"continued" its sale of the Watches subsequent to the parties' settlement, and that it learned of
Giftports' continued sale from that same internet website, a fact it could have ascertained at any
time in the last three years.  (2011 Original Complaint ¶ 24-25).  Plaintiff took no further action
for years.  Instead, it simply sat on its purported rights, while Giftports continued its sales of this
brand, and built its reputation as a full line watch retailer including this brand, and accumulated
profits that plaintiff presumably would demand should be disgorged.  This represents unjustified
delay and prejudice to defendant if the action is allowed to proceed.[7]  *See, e.g. Trustees of
Columbia University*, 964 F. Supp. at 752-753 (complaint dismissed for laches based on three
year delay); *Conopco, Inc. v. Campbell Soup Co.,* 95 F.3d 187 (2d Cir. 1996).

### III.       PLAINTIFF HAS FAILED TO ALLEGE A LANHAM ACT VIOLATION

On its face, the Amended Complaint lacks "sufficient factual matter, accepted as true, to
state a claim to relief that is plausible on its face" with regard to the Lanham Act.  *Ashcroft v.
Iqbal*, 129 S. Ct. 1937, 1949 (2009). This Circuit has made clear that "a plaintiff's obligation to
provide the grounds of [its] entitle[ment] to relief requires more than labels and conclusions, and
a formulaic recitation of the elements of a cause of action will not do."  *Starr v. Sony BMG
Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010) (quoting *Bell Atlantic Corp. v. Twombly*, 550
U.S. 544, 555 (2007)).  Moreover, the court need not credit plaintiff's legal conclusions.  *Jasper
& Black, LLC v. Carolina Pad Co.,* LLC, No. 10 Civ. 3562 (LTS)(HBP), 2012 WL 413869
(S.D.N.Y. Feb. 9, 2012).  Under these standards, plaintiff's Lanham Act allegations fail.

---

[7] Had plaintiff promptly notified Giftports in 2009 that it intended to enforce its purported rights with respect to
Giftports' purchase and sale of TechnoMarine brand watches, Giftports would have had its remedies in Court or
could have chosen to cease such sales.

A.    No Lanham Act Claim for Sale of Genuine Watches

It is long and well settled in the Second Circuit that "'trademark law does not reach the sale of genuine goods bearing a true mark even though the sale is not authorized by the mark owner.'" *Polymer Tech. Corp. v. Mimran,* 975 F.2d 58, 61 (2d Cir. 1992); *H.L. Hayden Co. of New York, Inc. v. Siemens Medical Systems, Inc.*, 879 F.2d 1005, 1023 (2d Cir. 1989); *Bel Canto Design, Ltd. v. MSS HiFi, Inc.,* No. 11 Civ. 6353 (CM) 2011 WL 6355215, at *12 (S.D.N.Y. Dec. 16, 2011) (McMahon, J.).  This precept is referred to as the "first sale trademark doctrine," and "recognizes that the 'right of a producer to control distribution of its trademarked product does not extend beyond the first sale of the product.'" *Bel Canto Design, Ltd.,* 2011 WL 6355215, at *12.  Put simply, "[t]he Lanham Act does not give mark holders the right to control subsequent, non-authorized resales, as long as the product sold is genuine." *Id.*  As this Court explained in *Bel Canto,* "[t]he rationale for this doctrine is that 'trademark law is designed to prevent sellers from confusing or deceiving consumers about the origin or make of a product, which confusion ordinarily does not exist when a genuine article bearing a true mark is sold.'" *Id.* (citations omitted) (emphasis supplied); *accord H.L. Hayden Co. of N.Y., Inc. v. Siemens Med. Sys., Inc.,* 879 F.2d 1005, 1023 (2d Cir. 1989).  "Thus, if a defendant does no more than stock and resell genuine trademarked goods, the mark holder does not have a right to stop it under the Lanham Act." *Bel Canto*, 2011 WL 6355215, at *12, (citing *Zip Int'l Group, LLC v. Trilini Imports, Inc.*, No. 09-CV-2437 (JG)(VVP), 2011 WL 2132980, at *3, (E.D.N.Y. May 24, 2011)).  Since plaintiff's Amended Complaint has dropped the allegations as to warranty coverage, stocking and reselling the Watches is all that is asserted.  This leaves plaintiff with no "material difference" in the goods.  Under the cases cited,  plaintiff's various allegations of being "unauthorized" by plaintiff to resell or lacking "permission and authority" fail to state a Lanham Act claim, when the defendant merely buys and resells trademarked goods.[8]

---

[8]  In view of the law presented on the first motion to dismiss, the Amended Complaint drops the attempt to create a "difference" in the product by creating a corporate policy that TechnoMarine will not honor its warranties on sales made by internet resellers.  *Bel* Canto and NY GBL § 369-b eliminated the manufacturer's attempt to avoid its warranty obligations in such cases.

As a throw-away attempt to create a basis for a Lanham Act claim, the Amended Complaint alleges with no factual detail that because defendant is not "an authorized" dealer, "these goods are <u>either counterfeit or were obtained in bad faith</u>" from an authorized dealer. ¶¶ 30 and 46.  Under *Iqbal* and *Twombly*, a plaintiff cannot plead that goods are "counterfeit" as a factual "alternative" without any specification of facts as to the alleged non-authentic elements of the Watches (*e.g.,* cases, movements, hands).  Particularly is this so when plaintiff has had years of access to defendants' website sales of the Watches to find out and does not allege it examined the goods for genuineness.  Again, under *Iqbal* and *Twombly* the court should not credit such conclusory statements with no basis to demonstrate the plausibility of the speculative allegation that the Watches are in effect "either" real or counterfeit.  *Twombly,* 550 U.S. at 570. Moreover, the suggestion of "counterfeit" is  contradicted by plaintiff's complaining that these are real TechnoMarine watches bought from its authorized dealers but "without authority."

B.       <u>There Can Be No Likelihood of Confusion From Giftports' Sale of Genuine Watches</u>

Plaintiff's claims for trademark infringement, pursuant to 15 U.S.C. § 1114(a), and for false designation of origin, pursuant to 15 U.S.C. § 1125(a), both fail because plaintiff has not and cannot plausibly allege a likelihood of confusion arising out of Giftports' sale of genuine TechnoMarine watches as a matter of law. Accordingly, both claims should be dismissed.

A likelihood of consumer confusion as to origin, sponsorship, or approval of the goods or services or commercial activities is a fundamental element of any claim for trademark infringement or false designation of origin under the Lanham Act.  *Naked Cowboy v. CBS,* No. 11 Civ. 0942 (BSJ)(RLE), 2012 WL 592539 (S.D.N.Y. Feb. 23, 2012).   As a matter of Second Circuit law, when a genuine article is sold, no possibility of confusion exists.  *See, e.g., H.L. Hayden Co.*, *supra,* 879 F.2d at 1023.

Since plaintiff has failed as a matter of law to sufficiently allege a likelihood of confusion, plaintiff's First Claim for trademark infringement and Second Claim for false designation of origin should be dismissed, pursuant to Fed. R. Civ. P. 12(b).

C.      Defendant's Disclaimer Avoids Likelihood of Confusion

As a further ground for dismissal, plaintiff's express reference to defendants' website allows the Court to consider the homepage of that website, wherein defendant expressly discloses to all potential purchasers that it provides its own warranty [prior to the *Bel Canto* decision] because it is not an authorized dealer.  "Our guarantee applies even though some items may not be covered by the manufacturers warranty, because JOMASHOP.com is not an 'authorized' dealer of the merchandise."  (Exhibit F to the Thomashower Dec., exemplary website pages from 2010 and 2012, Ex F. p. 5 and p. 7).   Accordingly, consumers are expressly informed prior to their internet purchase that Jomashop "is not 'authorized' dealer of the merchandise" which is what gives it the freedom to price products below manufacturer's suggested or mandated resale prices.   Consumers are (and should be) free to make a purchasing decision whether to buy at lower prices from jomashop.com, or at higher prices from the TechnoMarine authorized dealers.  This is free competition with full disclosure, which is entirely consistent with the Lanham Act.

Judge McMahon's recent decision in *Bel Canto* is instructive.  In that case, the defendant repeatedly stated on its website that it was plaintiff's "exclusive online headquarter."   The court found that these statements were "not actionable under the Lanham Act because they do not risk confusing consumers as to the affiliation of [the parties]."  *Id.*  In particular, the claims were not false or misleading because the website "studiously avoid[ed] referring to [the defendant] as an 'authorized' [Plaintiff Brand] dealer [of the plaintiff]." 2011 WL 6355215 at *9.  Thus, because the plaintiff could not demonstrate a "probability of confusion" but only a "mere possibility" of consumer confusion, the court found the plaintiff's false affiliation claim to be insufficient.  *Id.* at *23; see also *Iqbal*, 129 S. Ct. at 1949 ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'") (quoting *Twombly*, 550 U.S. at 557).  The facts in this case are more compelling than in *Bel Canto* because, as quoted above, Giftports' website

16

affirmatively states that Giftports is "not an 'authorized' dealer."  Therefore, the Amended
Complaint's false affiliation allegations are implausible on their face, are contrary to the public
record, and should be rejected.

D.    There Is No Possibility of Dilution From The Sale of Genuine Goods

There is no claim for trademark dilution under the Federal Trademark Dilution Act where
the goods at issue are genuine goods bearing a true mark. *See, e.g., Ty Inc. v. Perryman,* 306
F.3d 509, 512-514 (7th Cir. 2002)(respecting dilution claim)("we do not think that by virtue of
trademark law producers own their aftermarkets and can impede sellers in the aftermarket from
marking the trademarked product'); *accord Scott Fetzer Co. v. House of Vacuums, Inc*., 381 F.3d
477, 489-909 (5th Cir. 2004); *Bijur Lubricating Corp.,* 332 F. Supp. 2d 722, 733 (D.N.J. 2004).
*Cf. Oleg Cassini, Inc. v. Weber's 32nd St. Corp.,* No. 07-CV-6301 (BSJ)(HBP) 2008 WL
2780988, (S.D.N.Y. July 16, 2008)(under controlling law, no claim for trademark dilution where
there are genuine goods, bearing a true mark).

Recognizing the fatal infirmities of basing a trademark dilution claim on the sale of
watches bearing the TechnoMarine trademark which TechnoMarine itself placed on the goods, in
its Third Claim for relief, plaintiff alleges – without a shred of factual support – that Giftports is
using a "counterfeit reproduction of the TechnoMarine Marks." (Amended Complaint ¶ 46).
Plaintiff pleads no facts to support the conclusory statement of a "counterfeit reproduction" of
the trademarks.  Again, as with the inadequate pleading of "counterfeit" watches, under *Iqbal*
and *Twombly* the court should not credit such conclusions with no basis to demonstrate the
plausibility of the bare allegation that the marks are "counterfeit reproductions."  And such a
claim of counterfeit is at odds with plaintiff's claim that in actuality defendant obtained genuine
watches from TechnoMarine's authorized dealers who plaintiff claims were induced to breach
their contracts with TechnoMarine for the resale of genuine Watches.  Regardless of the alleged
interference with contract claim, no facts are pleaded to demonstrate that the watches and marks

17

are not "genuine" products of plaintiff.  Accordingly, plaintiff's Third Claim should be dismissed as well.

### IV.   PLAINTIFF'S TORTIOUS INTERFERENCE CLAIM SHOULD BE DISMISSED

To prevail upon this claim under New York law, Plaintiff must establish:  "'(a) that a valid contract exists [between plaintiff and a third party]; (b) that [defendant] had knowledge of the contract; (c) that [defendant] intentionally and improperly procured the breach of the contract; and (d) that the breach resulted in damage to the plaintiff.'"  *Jasper & Black, LLC v. Carolina Pad Co., LLC*, No. 10 Civ. 3562 (LTS)(HBP), 2012 WL 413869 at *9 (S.D.N.Y. Feb. 9, 2012) (citation omitted). *accord Semple v. Eyeblaster, Inc.,* No. 08 Civ. 9004 (HB), 2009 WL 1457163 (S.D.N.Y. May 26, 2009); *Camp Summit of Summitville, Inc. v. Visinski*, No. 06-cv-4994 (M) (GAY), 2007 WL 1152894 (S.D.N.Y. Apr. 16, 2007)

As to the first element, "[t]o adequately allege that a defendant improperly and intentionally interfered with performance of a contract, a plaintiff must identify the contract(s) in question, allege breach of the contract(s), and identify specific actions by the defendant that induced the third party's breach."  *Id.*  It is <u>not</u> enough to generally allege, as plaintiff does here, that plaintiff  "has had valid agreements with" its authorized distributors.  Amended Complaint ¶54.  *See Plasticware, LLC v. Flint Hills Res., LP*, No. 10 Civ. 6650 (KMK), 2012 WL 983373 at * 5 (S.D.N.Y. Mar. 22, 2012)(finding inadequate pleading of tortious interference with contract claim where plaintiff "merely has alleged that it has 'agreements' with its customers. This is insufficient.") (citations omitted).

Plaintiff's interference with contract claim should be dismissed because (a) plaintiff has failed to adequately identify any of the contracts at issue, (b) plaintiff has failed to allege that Giftports knowingly "induced" any breach of contract as opposed to merely making a purchase; and (c) any alleged interference was the result of actions taken for Giftports' economic self-interest.

Second, the Amended Complaint is devoid of any facts that support plaintiff's conclusory and formulaic recitation of the "knowledge" element of its interference claim. While plaintiff alleges that Giftports "had actual knowledge of Plaintiff's agreements with its retailers/distributors, and specifically of the aforementioned resale restrictions in said agreements" (Amended Complaint ¶ 55). it fails, for example, to specifically identify the contracts of which Giftports is alleged to have had knowledge, the parties to those contracts, or the manner in which Giftports allegedly obtained that "actual knowledge." [9]   Plaintiff itself cannot identify which third party contracts are allegedly at issue, apparently because it does not know which of its dealers is selling goods in this manner.  *See Iqbal,* 129 S. Ct. at 1949-50 ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.") (emphasis supplied).  Once again, this Court is not required to, and should not, accept plaintiff's conclusory and formulaic recitation of the elements of a claim in the absence of the required factual allegations.

Plaintiff also fails to allege what acts of defendant "knowingly induced" the breach of any particular contract (as opposed, for example, to independent and voluntary decisions by Plaintiff's authorized dealers to sell the Watches to unauthorized dealers).  *Jasper & Black, supra,* "[the plaintiff] has failed to present any non-conclusory allegations that any of these third parties breached a contract with Plaintiff, or that [the defendants] induced one of these third parties to breach such a contract"); *John Paul Mitchell Sys. v. Quality King Distribs., Inc.*, 106 F. Supp. 2d 462, 477 (S.D.N.Y. 2000) ("… it appears that [plaintiff's] clearest recourse is against the contracting party …").  As explained in *John Paul Mitchell Systems v. Pete-N-Larry's Inc*., 862 F. Supp. 1020, 1029  (W.D.N.Y. 1994):

---

[9]  Plaintiff's allegation that defendant should have "known" of these contracts based on a cease and desist letter from an attorney (Amended Complaint ¶26) is insufficient for the same reason of not identifying a particular contract or distributor.  Further, defendant cannot be expected to accept as fact the conclusory assertions of an adverse party's attorney, provided with no factual details.

> [T]he plaintiffs' claim fails to show "inducement" of the alleged breach. *Cf.,* Restatement of Torts (2d) § 766, comment n (mere making of agreement by a third party with knowledge of the inevitable breach of contract by the other party does not constitute actionable inducement). The fourth claim will be dismissed.

*See also V. Marangi Carting Corp. v. Judex Enters.,* 171 Misc. 2d 820, 655 N.Y.S.2d 832 (Sup. Ct. N.Y. County 1997).

Fourth, the Amended Complaint fails to allege, even as a conclusory and formulaic matter (let alone with any requisite factual underpinning), that Defendant acted "without justification" to induce breaches by unnamed third parties of their alleged contracts with Plaintiff. *Jasper & Black*, *supra* at 10-11; *Semple*, *supra*; *Independent Asset Mgmt. LLC v. Zanger*, 538 F. Supp. 2d 704, 711 (S.D.N.Y. 2008); *WorldHomeCenter.Com, Inc. v. Franke Consumer Prods*., 2011 WL 2565204 (S.D.N.Y. June 22, 2011).

Regardless, because Giftports is alleged to have purchased the Watches for the purpose of reselling them in connection with its own online retail business, Giftports did not use improper means, and its actions were in furtherance of its own economic self-interest, and cannot support a claim for interference with contract. *See, e.g., Imtrac Indus., Inc. v. Glassexport Co., Ltd.*, No. 90 Civ. 6058, 1996 WL 39294, at *7 (S.D.N.Y. Feb. 1, 1996) ("The scope of what constitutes 'improper interference, however, has been narrowed by the self-interest exception: as long as the means employed are not improper or malicious, one with a financial interest in the business that is subject to the contract is privileged to interfere with the contract in order to protect that self-interest.") (citing cases); *Jasper & Black,* 2012 WL 413869; *Semple*, 2009 WL 1457163.

Accordingly, the plaintiff's Fourth Claim for tortious interference with contract should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

Finally, it is well settled that if the federal claims are dismissed at the pleading stage, the district court in its discretion should dismiss pendent state claims without prejudice. As explained by the Second Circuit, this is "the usual case in which all federal-law claims are eliminated before trial' such that 'the balance of factors to be considered ... judicial economy, convenience, fairness, and comity ... will point toward declining to exercise jurisdiction over the

20

remaining state-law claims.'"   *Kolari v. N.Y.-Presbyterian Hosp., 455 F.3d 118, 119 (2d Cir.2006)* (omissions in original).

### V.      THE COMPLAINT'S FIFTH CLAIM FOR COMMON LAW UNFAIR COMPETITION SHOULD BE DISMISSED

It is well recognized that the standard for proving unfair competition under New York common law is almost indistinguishable from the standard necessary to prove liability under the Lanham Act and requires proof of likelihood of confusion as to the source of the goods.  *See, e.g., LaChapelle v. Fenty,* 812 F. Supp 2d 434 (S.D.N.Y. 2011); *Tri-Star Pictures, Inc. v. Unger*, 14 F. Supp. 2d 339, 363 (S.D.N.Y. 1998).

Plaintiff's common law unfair competition claim relies solely on the allegations supporting its Lanham Act claims, and contains no separate or independent basis for establishing a likelihood of confusion arising out of Giftports' sale of the genuine TechnoMarine Watches. As discussed above, the Amended Complaint's allegations of a "likelihood of consumer confusion" arising out of Defendant's sales of the Watches are both contrary to law and implausible.  Accordingly, plaintiff's Fifth Claim should be dismissed for the same reasons that warrant dismissal of plaintiff's Lanham Act claims.[10]   *See also A&G Healthplans, Inc. v. National Network Servs. Consultants, Inc.*, No. 99 CV 12153 (GBD), 2003 WL 1212933 (S.D.N.Y. Mar. 14, 2003); *La Cibeles, Inc. v. Adipar, Ltd.,* No. 99 Civ. 4129 (AGS), 2000 U.S. Dist. WL 1253240 (S.D.N.Y. Aug. 31, 2000); *Horn's, Inc. v. Sanofi Beaute, Inc.,* 963 F. Supp. 318, 328 (S.D.N.Y. 1997).

### VI.      THE COMPLAINT'S SIXTH CLAIM FOR COPYRIGHT INFRINGEMENT SHOULD BE DISMISSED

The new Sixth Claim of the Amended Complaint alleges copyright infringement under 17 U.S.C. § 501, based on the claim that "[p]roducts sold by Defendant bear marks/designs identical

---

[10] Furthermore, as plaintiff's amendment effectively concedes, NY GBL §369-b demonstrates that aftermarket sales by unauthorized retailers *are* justified and are not the subject of unfair competition claims by manufacturers such as plaintiff.  *See, e.g., Ty,* 306 F.3d at 512-14; *Bel Canto, supra.  Scott Fetzer*, 381 F.3d at 489-90; *Bijur*, 332 F.Supp.2d at 733.

to one or more of Plaintiff's Copyrighted Works." (Amended Complaint ¶67).  The Copyrighted Works are alleged specifically to be "the TM logo" recently registered as Copyright Reg. No. VA 1-805-911 and VA 1-807-470.  (Amended Complaint ¶65)  To establish a copyright infringement cause of action, a plaintiff must show ownership of a copyright, in an original work of copyrightable subject matter, a valid federal registration, and unauthorized copying by defendants of the constituent elements.  *See, e.g., Feist Publications, Inc. v. Rural Tel. Serv. Co.,* 449 U.S. 340, 361 (1991); *Folio Impressions, Inc. v. Byer Cal.,* 937 F.2d 759, 763 (2d Cir. 1991)).

Plaintiff failed to attach a valid copyright registration to its Amended Complaint, which is grounds to dismiss.  *Vargas v. Pfizer, Inc.*, 418 F. Supp. 2d 369, 373 (S.D.N.Y. 2005).  However, because plaintiff has identified the registrations and provided them informally (Ex E. to Thomashower Dec.) we assume the Court would allow an amendment for that deficiency.  *Id.*

Even considering the registrations, plaintiff still would not state a claim for copyright infringement because the TM Logo is not an original copyrightable subject matter and expression as a matter of law.  The "*sine qua non* of copyright is originality."  *Feist Publ., Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 345 (1991).  A work of authorship is "original" if it (a) is independently created and (b) "possesses at least some minimal degree of creativity."  *Id.* (citation omitted).

However, as is clear from precedents and the Copyright Office Regulations "[w]ords and short phrases such as names, titles, and slogans; familiar symbols or designs; mere variations of typographic ornamentation, letter or coloring" are "not subject to copyright."  37 C.F.R. § 202.1(a).  In addition, "[p]ersuasive case law further supports the principle that variations in lettering cannot support copyright protection" as a matter of law.  *Zhang v. Heineken N.V.,* No. CV 08-6506 GAF (RCx), 2010 WL 4457460, 96 U.S.P.Q.2d (BNA) 1409 (C.D. Cal. May 12, 2010) (citing *Tufenkian Imp./Exp. Ventures, Inc. v. Einstein Moomjy, Inc.,* 338 F.3d 127, 132 (2d Cir. 2003)).  This is because "the public domain includes, for example, both the generic shape of [alphabetic letters] and all of the elaborately more specific [letters] from the hundreds of years of

font designs that have fallen into the public domain." *Id.; see also Kitchen of Sara Lee, Inc. v. Nifty Foods Corp.,* 266 F.2d 541, 544 (2d Cir. 1959) ("'Brand names, trade names, slogans, and other short phrases or expressions cannot be copyrighted, even if they are distinctively arranged or printed.' The Copyright Office does not regard as sufficient to warrant copyright registration 'familiar symbols or designs, mere variations of typographic ornamentation, lettering or coloring, ….'") (citations omitted). The reason for this is the well-known concept that copyright does not protect ideas, only original expressions. Allowing protection for the use of two overlapping letters T and M would tend to remove that arrangement of two common letters from use by others.

Thus, in *Coach, Inc. v. Peters,* 386 F. Supp. 2d 495, 498 (S.D.N.Y. 2005), the court affirmed the decision not to award a copyright registration to a logo design featuring the letter "C" linked in an ornamental fashion so that it appeared to mirror another letter "C", because "mere variations of letters, and familiar symbols cannot be copyrighted." *Id.* (citations omitted); *see also Zhang*, *supra* (affirming decision not to grant copyright registration for "variations of long-established Chinese word characters" because "[to] provide [the plaintiff] with a copyright in this case would effectively give him a monopoly on renditions of these five Chinese characters.") (emphasis added); *PrimeSource*, *Inc. v. Personnel Resource, Inc.* 1998 WL 543366 (W.D.N.Y. 1998) (finding logo to be insufficiently creative for copyright protection and dismissing copyright claim where "the only elements of the [] logo that might sustain a copyright for [the plaintiff] are the spacing of the letters and their precise shapes," which were "*de minimis*" elements creativity); *John Muller & Co. v. New York Arrows Soccer Team, Inc.,* 802 F.2d 989, 990-91 (8th Cir. 1986) (no copyright for logo consisting of word "Arrows" in script) .

Secondly, the claim should be dismissed because there is no factual or plausible allegation of copying. Indeed, the factual thrust of the amended complaint is that defendant obtains genuine watches and resells them at a discount. Thus defendant did not "copy" anything

but merely purchased and resold plaintiff's own goods.  This does not make out a case for copying and "infringement."

Plaintiff attempts to claim some violation of its rights by alleging that defendant is "selling piratical copies of the design" based again on the factually vacuous pleading that the Watches are "either counterfeit or were obtained in bad faith" (Amended Complaint ¶¶67-68). As already explained in connection with the very same allegation in the Lanham Act claims, the Court should not credit such an allegation when there are no facts to show in what regard the Watches are not genuine or what parts are not genuine, where plaintiff has had ample opportunity to make such a determination.

Finally, even though a certificate of copyright registration would normally be *prima facie* evidence of ownership and validity, the documentary evidence in this case shows why that allegation should not be credited.  As the applications were presented, the Copyright Office was not informed that the design was a mere logo of the letters T and M as conceded in the Amended Complaint. Had that been disclosed, registration would have been denied under the applicable regulations against such registrations, cited above, 37 C.F.R. § 202.1(a).  Instead, the registrations show that what was claimed was "jewelry design") (the '470 Reg.) and a "2-D artwork" in a "fabric design" (the '911 Reg.).[11] In addition, the claimed dates of first publication, January 1, 2012 and June 15, 2010, respectively, are demonstrably false since the TM logo design is documented having been first used by TechnoMarine in 1998 as part of its trademark, U.S. Reg. No. 2,934,608 (Ex. G to Thomashower Dec.)  The sum of these non-disclosures also suggest fraud was practiced on the Copyright Office. However, without reaching that issue, where the face of the registration and contemporaneous documentary evidence allow the Court to determine invalidity, dismissal under Rule 12(b) is warranted, notwithstanding issuance of a registration.  *TPTCC NY, Inc. v. Radiation Therapy Services, Inc. et al.*, 784 F. Supp. 2d 485, 499-500 (S.D.N.Y.) (dismissing copyright claim despite registration), *aff'd and rev'd in part on*

---

[11] Plaintiff's counsel provided copies of the two registrations but not the deposit copies to show what "jewelry design" and what "fabric design" were actually submitted to the Copyright Office. Thomashower Decl. ¶10.

*other grounds,* 2011 WL 6849041 (2d Cir. 2011).  For all these reasons, the Court should dismiss the Sixth Claim for copyright infringement.

A.      <u>Defendant Should Be Awarded Its Fees And Costs Under 17 U.S.C. § 505</u>

Section 505 of the Copyright Act empowers the Court to award defendant its reasonable attorneys' fees and costs as the "prevailing party," if the Court grants defendant's motion to dismiss plaintiff's copyright claim.  An award under § 505 is entrusted to this Court's discretion. It is apparent from the late copyright filing in response to the expected motion to dismiss and in light of the deficiencies shown above, that plaintiff has never genuinely believed that the TM logo was an original work that was copyrightable, has mislead the Copyright Office as to the dates of publication and nature of the alleged work, and has no good faith basis to assert that defendant "copied" or "counterfeited" the logo in reselling plaintiff's own Watches.  Plaintiff's effort to create a meritless and untimely copyright claim in the course of litigation warrants an award under § 505 in Defendant's favor.

**CONCLUSION**

For the foregoing reasons, defendant Giftports, Inc. respectfully requests that the Court dismiss each of the claims of plaintiff TechnoMarine SA's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

Respectfully submitted,

SCHWARTZ & THOMASHOWER LLP

Dated: New York, New York
       May 24, 2012

William Thomashower
Rachel Schwartz
15 Maiden Lane, Suite 705
New York, NY  10038
Tel: 212-227-4300